**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PEDRO PABLO RIZO OJEDA, | Civil Action No. 26-3217 (ZNQ) |
| Petitioner, | |
| v. | **OPINION** |
| LUIS SOTO, *et al.*, | |
| Respondents. | |

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's habeas petition challenging his ongoing immigration detention. (ECF No. 1.) Following an order to answer, the Government filed responses to the petition (ECF Nos. 7, 11), to which Petitioner replied. (ECF No. 8.) Also before the Court are Petitioner's motions seeking a temporary restraining order (ECF No. 2) and for release pending final relief in this matter. (ECF No. 9.) For the following reasons, Petitioner's habeas petition shall be granted, and Petitioner shall be accorded with a bond hearing at which the Government bears the burden of proof by clear and convincing evidence within ten days. Petitioner's motion seeking a temporary restraining order shall be denied as moot, and Petitioner's motion seeking release pending final relief in this matter shall be granted.

I.   **BACKGROUND**

Petitioner is a native and citizen of Nicaragua who crossed the southern border of the Untied States without admission or inspection on or about October 29, 2021. (ECF No. 7-2 at 2-3.) Petitioner was taken into custody by border patrol officers shortly after crossing, and was

processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1).  (*Id.* at 3.)  Petitioner was thereafter released on parole on November 11, 2021, pursuant to 8 U.S.C. § 1182(d)(5)(A) pending proceedings on Petitioner's expressed fear of return to his home country.  (*Id.*; ECF No. 8-1 at 1.)  Petitioner thereafter remained at liberty in the United States until March 13, 2026, when he was found not to have a credible fear of removal by immigration officials and was taken back into custody pursuant to § 1225(b)(1).  (ECF No. 7-2 at 3.)  Petitioner requested an immigration judge review the negative credible fear finding, and the immigration judge ultimately affirmed the negative credible fear finding, and Petitioner was issued a final expedited order of removal on March 20, 2026.  (*See* ECF No. 7-7.)  Petitioner "has no known criminal history."  (ECF No. 7-2 at 3.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.    DISCUSSION

In his habeas petition, Petitioner seeks to challenge both the expedited removal order issued against him and to challenge his ongoing detention pursuant to 8 U.S.C. § 1225(b)(1).  Turning first to the issue of the expedited removal order, this Court's authority to review an expedited removal order and the proceedings that led to its issuance are exceedingly limited.  *See Castro v.*

*United States*, 835 F.3d 422, 430 (3d Cir. 2016) (discussing 8 U.S.C. § 1252(e)). Generally, a district court in habeas review is expressly limited to addressing only three questions: whether the petitioner is an alien, whether he was ordered removed, and whether he can show he was previously lawfully admitted for permanent residence, as a refugee, or granted asylum, without that status being terminated. *Id.* Where, as here, the petitioner admits he is not an American citizen and does not assert he was relevantly lawfully admitted – in this case Petitioner admits he crossed the border without admission or inspection and was caught shortly after– the Court's jurisdiction is limited to "whether [an expedited removal order] in fact was issued and whether it relates to the petitioner." *Id.* Thus, a reviewing court can only determine "whether an immigration officer issued that piece of paper and whether the Petitioner is the same person referred to in that order." *Id.* at 431 (internal quotations omitted). Because Petitioner is not an American citizen, was not granted permanent residence or asylum, and received a final expedited removal order when the immigration judge affirmed his negative credible fear finding and returned his case to DHS for the execution of his removal order, this Court may not look beyond Petitioner's removal order or address Petitioner's claims that the procedures used for that order were improper.[1]  *Id.*; *see also Sangare v. Soto*, No. 26-758, 2026 WL 575374, at *1-2 (D.N.J. Mar. 2, 2026).

---

[1] The sole exception to this rule would apply only where the petitioner has a viable basis for arguing that the Suspension Clause requires habeas review beyond that which is permitted by § 1252(e). *Castro*, 835 F.3d at 431; *see also Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 166-67 (3d Cir. 2018). The Suspension Clause, however, does not apply in this context of an alien who receives humanitarian parole under § 1182(d)(5)(A) unless that alien has entered into a special relationship with the United States or a particular state which creates "significant ties to this country" which would warrant additional procedural protections beyond those normally available to such aliens. *Osorio-Martinez*, 893 F.3d at 166-67. Mere presence in the United States for several years after being paroled is insufficient to create such a relationship, instead something significantly more is required – such as the granting of Special Immigrant Juvenile States or some similar standing far beyond prolonged presence. *Id.* Petitioner has not presented any such special status in his case, and this Court perceives none from the record, and the Suspension Clause thus does not provide a greater avenue for review of his expedited removal proceedings and order.

Although this Court cannot review Petitioner's expedited removal order and proceedings, this Court does maintain jurisdiction to review claims related solely to the lawfulness of continued detention without bond pending the execution of that order. In this matter, Petitioner contends that his continued detention under 8 U.S.C. § 1225(b) is unlawful. The Government instead argues that he remains subject to § 1225(b)(1) in light of the circumstances of his initial detention and parole. As this Court has previously explained,

> Aliens who attempt to enter the United States illegally and who are detained shortly after making an unlawful crossing of the border are "treated as an applicant for admission" and are subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border." *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to this provision will generally be issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported, in which case they are referred for further proceedings regarding their expressed fear. *Id.* Aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout their removal and credible fear proceedings, though the Government may in its discretion temporarily parole such aliens into the United States "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's removal proceedings, after which an alien would have a final order of removal, and detention under § 1225(b)(1) ends. *Id.* at 300-03.

*Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *1 (D.N.J. Feb. 2, 2026).

Aliens subject to expedited removal under 8 U.S.C. § 1225(b)(1) are therefore subject to mandatory detention throughout their removal proceedings, and are generally not entitled to release unless the Government chooses to parole them. *Id.* The parole statute, 8 U.S.C. § 1182(d)(5)(A), provides that an alien who is paroled "shall forthwith return or be returned to the custody from which he was paroled" and continue to be detained pursuant to the original detention statute. As Petitioner was caught by immigration officials shortly after crossing the border and was thereafter paroled, he remains properly subject to § 1225(b)(1), and is not entitled to a bond hearing under that statute. *See Arcos Tasigchana*, 2026 WL 266170 at *1-2; *see also Jennings*, 583 U.S. at 297 (until the relevant proceedings under § 1225(b) end "nothing in the statutory text imposes any limit on the length of detention").

Although Petitioner is subject to mandatory detention under § 1225(b)(1), Petitioner also argues that his prolonged detention without bond violates his rights to Due Process. As this Court recently explained,

> Although aliens subject to detention under § 1225(b)(1) "have only those rights regarding admission that Congress has provided by statute" and the Due Process clause does not provide for detailed review of those statutory proceedings, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020), it does not follow that the Due Process clause is silent as to the rights of aliens to liberty following prolonged detention, especially where that alien was previously permitted to be at liberty on parole for a considerable period.

> Courts in this District have long presumed that aliens subject to prolonged detention under the statute have a liberty interest in release from detention which requires a bond hearing. *See, e.g., Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442-43 (D.N.J. 2019). In so doing, courts have analogized mandatory detention under 1225(b) to the similar mandatory detention required for aliens who have qualifying criminal convictions under 8 U.S.C. § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-13 (3d Cir. 2020). In *German Santos*, the Court of Appeals held that where an alien is subject to prolonged detention under the

statute, that detention will eventually reach a point where it essentially becomes arbitrary in light of the purposes and presumptions underlying the statute. *Id.* In the context of those with criminal convictions subject to detention under § 1226(c), detention "becomes more and more suspect after five months and in most cases will become "unreasonable sometime between six months and one year." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026). Once the length of detention becomes suspect, a reviewing court must consider the length of detention and likelihood of lengthy continued condition, the similarity of Petitioner's conditions of confinement to criminal detention, and the Petitioner's responsibility for the length of his own detention in determining whether detention has become arbitrary in light of the purposes of § 1226(c). *German Santos*, 965 F.3d at 211. Where those factors indicate that detention has become arbitrary, the alien is entitled to a bond hearing at which the Government bears the burden of proving that further detention is necessary by showing that the Petitioner is a danger or flight risk by clear and convincing evidence. *Id.* at 213-14.

This Court agrees that, at a certain point, detention under § 1225(b)(1) will become so prolonged that it becomes arbitrary and Due Process will require a bond hearing. *Tuser E.*, 370 F. Supp. 3d 442-43. The question that remains, then, is at what point detention will become suspect. Although in the § 1226(c) context, detention will become arbitrary only after cresting five months, that length of time is based on the concept that the court can essentially presume that an alien convicted of qualifying crimes is a flight risk or danger to the community for the length of time it ordinarily would take to complete removal proceedings. *German Santos*, 965 F.3d at 209-10. The alien's criminal history is in that context providing the basis for the presumption which places a limits on his liberty interests in the § 1226(c) context.

Aliens detained under § 1225(b)(1) are not held based on a criminal history[.] The statute instead relies chiefly on the presumption that an alien with no clear right to admission into the United States is a flight risk and may therefore be detained for the relatively limited period of time required for him to receive an *expedited* order of removal. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(A). Such proceedings are clearly intended to be considerably shorter than the general removal proceedings to which criminal aliens already in the United States are subject under § 1226(c), and the presumptive basis for mandatory detention under the statute is considerably weaker than that applicable to criminal aliens as it is based solely on the lack of legal status rather than past misdeeds. It

> therefore follows that detention under § 1225(b)(1) should become
> suspect far sooner than detention under § 1226(c).

*Martinez Olivo v. Soto*, No. 26-2122, 2026 WL 1265500, at *2-3.  In light of the lesser justification for prolonged detention under § 1225(b)(1), this Court has found that detention in a jail-like detention facility for several months following a lengthy period of parole within the United States is sufficient to warrant the granting of a bond hearing.  *Id.*

Like the petitioner in *Martinez Olivo*, Petitioner in this matter has been detained in a jail-like detention facility for several months after a lengthy period of parole without any evidence of criminality or other violations during that parole.  Despite the immigration judge's decision in Petitioner's credible fear proceedings, the Government has not provided the Court clear evidence that Petitioner's detention is likely to end in the near future or that Petitioner's expedited removal order is likely to culminate in Petitioner's removal in the near future, nor has the Government provided any evidence that Petitioner is responsible for any delays in his proceedings or in prolonging his own detention.  In light of these facts, this Court finds that Petitioner's detention is sufficiently prolonged that the presumption that his lack of status renders him a flight risk is no longer sufficient to satisfy Due Process as a basis for continued detention without bond.  Petitioner's continued mandatory detention without a bond hearing has therefore become sufficiently prolonged as to be arbitrary, and he is entitled to a bond hearing at which the Government bears the burden of establishing that he is a flight risk or danger to the community by clear and convincing evidence.  *German Santos*, 965 F.3d at 213-14.  Petitioner's habeas petition shall therefore be granted, and he shall be provided such a bond hearing within ten days.[2]

---

[2] Should Petitioner be granted release on bond, such a release shall not be construed as an admission into the United States for immigration purposes, and such release provides no legal status to remain in the United States which Petitioner did not already possess.  Release on bond would also not prevent the Government from eventually taking Petitioner into custody for the

Petitioner's motion seeking a temporary restraining order shall be denied as moot in light of the granting of this relief.

In addition to his habeas petition and temporary restraining order motion, Petitioner has also filed a motion for release pending final relief in this matter pursuant to *Lucas v. Hadden*, 790 F.2d 365, 367-68 (3d Cir. 1986), and its progeny.  (ECF No. 9.)  Under *Lucas*, this Court has the authority to grant a litigant release on bail pending final habeas relief where the petitioner raises "substantial constitutional claims upon which he has a high probability of success, and . . . when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective."  *In re Souels*, 688 F. App'x 134, 135 (3d Cir. 2017) (quoting *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992)).

In this matter, Petitioner presented a substantial claim for relief as he has shown that his continued detention without bond under § 1225(b)(1) has become so prolonged as to become arbitrary, and has shown a high probability of success on the merits of that claim for the reasons detailed above.  Petitioner has additionally shown that he has been subject to extraordinary circumstances in his detention as the terms and conditions of his confinement of late have been severe – including exposure to tear gas without cause and medical and respiratory distress resulting from that exposure.  (*See* ECF No. 9 at 7.)  Petitioner has also reported harsh conditions including spoiled food, water fountains with tainted water, and a lack of sufficient hygiene products.  (*Id.* at 7-8.)  In light of these circumstances, this Court finds that Petitioner has shown sufficient extraordinary circumstances to warrant a grant of release on bail pending final habeas relief.  The

---

purposes of executing a final removal order once the Government has secured a travel document for Petitioner.  Because the Government does not contend that Petitioner is subject to detention under 8 U.S.C. § 1231(a), the Court need not and does not decide whether the Government has the authority to detain Petitioner under that statute at this time.

Court will therefore grant Petitioner's motion, and will order the Government to release Petitioner from detention under an order of supervision until such time as his bond hearing can be completed.

## IV.    CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED**, and Petitioner shall be provided a bond hearing at which the Government bears the burden of demonstrating danger or flight risk by clear and convincing evidence within ten days.  Petitioner's motions seeking a temporary restraining order (ECF No. 2) is **DENIED WITHOUT PREJUDICE** as moot, and Petitioner's motion seeking release pending final relief (ECF No. 9) is **GRANTED**.  An appropriate order follows.

Date: June 15, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**